|  |  |
|---|---|
| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |

| | |  |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 1:91-CR-2(14) |
| | § | |
| JIMMY CATO | § | |

## MEMORANDUM AND ORDER

Pending before the court is Jimmy Cato's ("Cato") *pro se* Motion to Terminate Supervised Release (#95), wherein Cato seeks early termination of his five-year term of supervised release. While Cato's supervising United States Probation and Pretrial Services ("Probation") Officer in the Southern District of Texas does not oppose the motion, his Probation Officer in the Eastern District of Texas prepared a report and recommends that the court deny his motion, allowing Cato to complete his term of supervised release, as ordered. The Government is also opposed to Cato's request for early termination. Having considered the motion, Probation's report, the Government's position, the record, and the applicable law, the court is of the opinion that Cato's motion should be denied.

I.  Background

On September 12, 1991, a federal grand jury in the Eastern District of Texas, Beaumont Division, returned a Third Superseding Indictment against Cato, charging him in Count One with Conspiracy to Distribute and Possess with Intent to Distribute Cocaine and Cocaine Base in violation of 21 U.S.C. § 846. On May 8, 1992, following a seven-day jury trial, the jury returned a verdict finding Cato guilty of the charged offense. On August 5, 1992, the court sentenced him to 420 months' imprisonment, followed by 5 years of supervised release. On appeal, the United States Court of Appeals for the Fifth Circuit affirmed Cato's conviction and sentence on December

22, 1993. *See United States v. Cato*, 9 F.3d 1526 (5th Cir. 1993). The Supreme Court of the United States denied his petition for a writ of certiorari on April 6, 1993. Cato filed a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 on March 31, 1997, which the district court denied on February 29, 2000. The Fifth Circuit denied him a certificate of appealability on September 29, 2000. Cato was released from prison and began his term of supervised release on April 18, 2022, in the Southern District of Texas, which is projected to expire on April 17, 2027.

In his motion, Cato, age 65, asks the court to terminate his supervised release at this time. Cato maintains that he has successfully transitioned into society—participating in halfway house requirements without any failures, maintaining full-time employment, and having negative results on all his random drug tests. He states that he has reconnected with his family, works with a non-profit organization for the homeless, and volunteers at his church. Cato asserts that he is "fully rehabilitated and committed to living a responsible and constructive life."

II.  Analysis

Title 18, United States Code, Section 3583(e) authorizes a district court to terminate supervised release at any time after the expiration of one year if, after considering the factors set forth in Section 3553(a),[1] "it is satisfied that such action is warranted by the conduct of the

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable Sentencing Commission guidelines and policy statements; any pertinent policy statement of the Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1); *accord United States v. Johnson*, 529 U.S. 53, 59-60 (2000); *United States v. Peters*, 856 F. App'x 230, 233 (11th Cir. 2021); *Herndon v. Upton*, 985 F.3d 443, 446 n.5 (5th Cir. 2021); *United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020); *United States v. Cochran*, 815 F. App'x 361, 363 (11th Cir. 2020); *United States v. Davies*, 746 F. App'x 86, 88-89 (3d Cir. 2018). "Early termination of supervised release is not an entitlement." *United States v. George*, 534 F. Supp. 3d 926, 927 (N.D. Ill. 2021). Instead, the defendant bears the burden of demonstrating that early termination is warranted. *Id.*; *United States v. Luna*, No. 1:95-cr-05036-AWI, 2018 WL 10156108, at *1 (E.D. Cal. Mar. 12, 2018), *aff'd*, 747 F. App'x 561 (9th Cir. 2018). Early termination "is not warranted as a matter of course." *United States v. Morris*, No. 3:99-cr-264-17 (VAB), 2022 WL 3703201, at *3 (D. Conn. Aug. 26, 2022). "To the contrary, it is only 'occasionally' justified." *United States v. Shellef*, No. 03-CR-0723 (JFB), 2018 WL 3199249, at *1 (E.D.N.Y. Jan. 9, 2018) (quoting *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)).

Although Cato's supervising Probation Officer in the Southern District of Texas does not oppose his motion, this fact, standing alone, is insufficient to justify granting his request for early termination. *See*, *e.g.*, *United States v. Boyd*, 606 F. App'x 953, 960 (11th Cir. 2015) ("Just as a federal prosecutor or probation officer cannot dictate a district court's sentence, they likewise do not call the shots concerning a court's decision whether to terminate early a term of supervised release. A criminal sentence is the court's sentence, not the prosecutor's and not the probation officer's."); *United States v. Lynn*, No. S90-00053(P), 2022 WL 2446328, at *3 (S.D. Miss. May 31, 2022) (finding that although the Government and Probation did not oppose early termination, that fact, standing alone, was insufficient to justify granting the defendant's request for early

termination of supervised release); *United States v. Hartman*, No. 3:00-cr-228-B(01), 2013 WL 524257, at *1 (N.D. Tex. Jan. 18, 2013) (denying defendant's request for early termination of supervised release despite the Government's recommendation that it be granted), *adopted by* 2013 WL 540490 (N.D. Tex. Feb. 13, 2013); *United States v. Grimaldi*, 482 F. Supp. 2d 248, 249 (D. Conn. 2007) (denying early termination of supervised release even though the defendant's probation officer supported it).

District courts enjoy considerable discretion in determining when the interest of justice warrants early termination. *United States v. Tacker*, 672 F. App'x 470, 471 (5th Cir. 2017); *United States v. Jeanes*, 150 F.3d 483, 484-85 (5th Cir. 1998); *Lynn*, 2022 WL 2446328, at *3; *see Melvin*, 978 F.3d at 52. Compliance with the terms of supervised release and with the law alone is not enough to merit early termination; such conduct is expected and required. *United States v. Taylor*, 729 F. App'x 474, 475 (7th Cir. 2018) ("[M]ere compliance with the terms of supervised release is expected, and without more, insufficient to justify early termination under 18 U.S.C. § 3583(e)"); *United States v. Seymore*, No. CR 07-358, 2023 WL 3976200, at *1 (E.D. La. June 13, 2023) ("[C]ourts have generally held that something more than compliance with the terms of [supervised release] is required to justify an early termination . . . ." (quoting *United States v. Smith*, No. 10-cr-53-DPJ-FKB, 2014 WL 68796, at *1 (S.D. Miss. Jan. 8, 2014))); *Lynn*, 2022 WL 2446328, at *4 (although the defendant adhered to the conditions of his release, a balancing of the 18 U.S.C. § 3553(a) factors did not support early termination, noting that the defendant "engaged in constant serious criminal behavior when he was given chances before"); *United States v. Sandles*, No. 11-CR-204-PP, 2021 WL 3080995, at *3 (E.D. Wis. July 21, 2021) ("[C]ourts have held 'that the conduct of the defendant necessary to justify early

termination should include more than simply following the rules of supervision; otherwise, every defendant who avoided revocation would be eligible for early termination.'" (quoting *United States v. O'Hara*, No. 00-cr-170, 2011 WL 4356322, *3 (E.D. Wis. Sept. 16, 2011))); *United States v. Boudreaux*, No. 2:19-CR-00377-01, 2020 WL 7635708, at *1 (W.D. La. Dec. 22, 2020); *United States v. Pittman*, No. 3:15-CR-221-O(1), 2020 WL 6564724, at *2 (N.D. Tex. Nov. 9, 2020) (finding that the conduct of the defendant did not warrant early termination of supervised release, as the defendant sought relief based on his circumstances and the alleged conduct of others) (citing 18 U.S.C. § 3583(e)(1)); *see United States v. Berger*, No. CR 09-308, 2021 WL 2354517, at *5 (W.D. Pa. June 9, 2021) ("Compliance with the conditions of supervision, including refraining from engaging in criminal conduct and paying restitution, however, is required behavior while serving a term of supervised release."). As courts have observed, "if every defendant who complied with the terms of supervised release were entitled to early termination, 'the exception would swallow the rule.'" *United States v. Kassim*, No. 15 Cr. 554-3 (KPF), 2020 WL 2614760, at *2 (S.D.N.Y. May 22, 2020) (citing *United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998)).

While the court need not find extraordinary, compelling, or changed circumstances to justify an early termination of supervised release, this does not mean that such circumstances are irrelevant to ruling on a motion under § 3583(e)(1). *United States v. Ferriero*, No. 13-0592 (ES), 2020 WL 6701469, at *2 (D.N.J. Nov. 13, 2020) (citing *Melvin*, 978 F.3d at 53); *accord United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016). This is because, if a sentence was "sufficient, but not greater than necessary" when first pronounced, pursuant to 18 U.S.C. § 3553(a), it would be expected that something has changed that would justify an early end to a term of supervised

5

release.  *Melvin*, 978 F.3d at 53; *United States v. Jackson*, No. 11-55, 2022 WL 2789870, at *2 (W.D. Pa. July 15, 2022); *United States v. Santoro*, No. 21-76 (MAS), 2022 WL 37471, at *2 (D.N.J. Jan. 4, 2022); *Ferriero*, 2020 WL 6701469, at *2.  In other words, extraordinary circumstances may be sufficient to justify early termination of a term of supervised release, but they are not necessary for such a termination.  *Melvin*, 978 F.3d at 53; *United States v. McClamma*, 676 F. App'x 944, 947 (11th Cir. 2017) ("New or unforeseen circumstances can justify a modification, but such circumstances are not necessary."); *Parisi*, 821 F.3d at 347 (recognizing that "changed circumstances may in some instances justify a modification" of a term of supervision).  Nonetheless, "'generally, early termination of supervised release under § 3583(e)(1)' will be proper 'only when the sentencing judge is satisfied that new or unforeseen circumstances' warrant it."  *Melvin*, 978 F.3d at 53 (quoting *Davies*, 746 F. App'x at 89); *Seymore*, 2023 WL 3976200, at *1 ("[E]arly termination is usually granted only in cases involving changed circumstances, such as exceptionally good behavior." (quoting *Smith*, 2014 WL 68796, at *1)).

Cato's offense of conviction entails his participation in a conspiracy to distribute and possess with intent to distribute cocaine and cocaine base for which he was sentenced on August 5, 1992, to 420 months' imprisonment.  While serving his sentence at the Federal Correctional Institution in Three Rivers, Texas ("FCI Three Rivers"), Cato was determined to be in possession of marijuana on February 15, 2009.  The marijuana was contained in a small, plastic-covered ball found in his cell along with 3,485 postage stamps valued at $1,463.70.  Although he was not prosecuted, Cato received disciplinary sanctions including the loss of visitation, telephone, email, and commissary privileges.  He also lost 180 days of good conduct time.  On March 10, 2009,

correctional officers at FCI Three Rivers located and x-rayed what appeared to be a Pepsi Cola can belonging to Cato and found that it contained five, ball-shaped, plastic-wrapped objects that field-tested positive for marijuana. Laboratory analysis confirmed that the substance was 6.9 grams of marijuana. Cato admitted that the marijuana was his and that he purchased it from another inmate, stating that each marijuana package was worth approximately twenty books of postage stamps and that he stored the can in his cell locker. Cato further explained that he earned money to buy marijuana by running a gambling operation where he accepted both stamps and marijuana as currency to place bets. On May 21, 2010, Cato was convicted of possession of a prohibited object while an inmate at a federal correctional institution and was sentenced to 1 month of imprisonment, followed by 2 years of supervised release. *See United States v. Cato*, No. 6:09CR00063-001 (S.D. Tex. May 21, 2010).

Cato's Presentence Investigation Report ("PSR") prepared in the Southern District of Texas case in 2010 indicates that his criminal history prior to the commission of his 1992 drug conspiracy offense includes prior convictions for unlawfully carrying a weapon, robbery, driving while license suspended, and delivery of a controlled substance (cocaine). He also had prior arrests for theft and possession of a controlled substance. Cato has a long history of substance abuse, including the daily use of marijuana up to his arrest in the case at bar. Nonetheless, upon his placement in federal prison, he declined residential drug treatment as well as the drug education program, and, as discussed above, was subsequently sanctioned for and found guilty of possessing drugs while in prison.

In this situation, the court finds that Cato's post-release conduct does not warrant early termination of his supervised release. Although Cato maintains that he has fully complied with

his conditions of release to date and "no longer needs the assistance of the probation officer to live as a contributing member of society," Probation points out that he has a criminal history dating back to 1980, including prior convictions for robbery, drug offenses, and firearms possession. Cato has spent over thirty years in prison, during which time he committed additional offenses and remained a drug user, yet he now contends he is fully rehabilitated.  He maintains that he has worked full-time for the same employer for the past two years, claiming that he found "passion and purpose" when he began working for NRG Energy Plant in the spring of 2021.  Cato extols himself as the "ideal employee" who is "a very hard worker," "continues to exceed[] expectations," and "demonstrates unique leadership qualities," while providing no evidence of these accolades aside from his own self-appraisal.  Moreover, he identifies no new or exceptional circumstances or needs that would merit early release from supervision.  Cato fails to explain how the conditions of his supervised release limit his employment opportunities, interfere with his family responsibilities, or otherwise impact his daily life in a significant manner.  He does not clarify how being on supervised release keeps him from furthering his career, achieving additional goals, assisting his family, or engaging in volunteer activities.  According to Probation, Cato is currently being supervised as a low/moderate risk supervisee.  Under the circumstances, the court finds the current conditions of Cato's supervised release are not onerous and remain appropriate.

At this time, Cato has served about half of his five-year term of supervised release.  While Cato's achievements to date should be commended, continuing him on supervision will provide him the best opportunity for a successful reentry in view of his prior involvement in crimes involving drug distribution, violence, and firearms as well as his long history of substance abuse. Requiring Cato to complete his entire, five-year term of supervised release safeguards against the

8

reoccurrence of criminal activity and drug use, while imposing only a limited burden on Cato. Generally, early termination of supervised release is not granted unless there are significant medical concerns, substantial limitations on employment, or extraordinary post-release accomplishments that would warrant such a release. Cato does not identify any such circumstances in his motion and is instead seeking early termination of his supervision simply for complying with the conditions imposed by the court. Thus, although Cato appears to be on the right path, the court believes that completion of his full term of supervised release appropriately reflects the seriousness of his offense, deters future criminal conduct, and provides needed structure for his continued rehabilitation. *See Lynn*, 2022 WL 2446328, at *4. Having been incarcerated for more than thirty years, the court is of the opinion that Cato is in need of the full five-year term of supervised release to allow him to reintegrate fully into society. The America of 1991 if far different from the America of today due to the vast technological, political, and societal changes that occurred when Cato was imprisoned. In view of the these circumstances, Probation recommends that the motion be denied at this time, adding "Mr. Cato will be encouraged to continue progressing towards his goals while on supervision." The court concurs with Probation's assessment of the situation and finds that early termination of Cato's term of supervised release would not be in the interest of justice.

III.  Conclusion

In accordance with the foregoing, Cato's *pro se* Motion to Terminate Supervised Release (#95) is DENIED.

SIGNED at Beaumont, Texas, this 5th day of September, 2024.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE